UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NATHANIEL B. WASHINGTON,

                Petitioner,

    -vs-

H.D. GRAHAM, SUPERINTENDENT
AUBURN CORRECTIONAL FACILITY

                Respondent.

_____

**DECISION AND ORDER**
**No. 10-CV-0459T**

## I.    Introduction

*Pro se* Petitioner Nathaniel B. Washington ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered August 25, 2003, in New York State, Supreme Court, Erie County (Hon. Russell P. Buscaglia), convicting him, after a jury trial, of Manslaughter in the First Degree (N.Y. Penal Law ("Penal Law") § 125.20 [1]), Criminal Possession of a Weapon in the Second Degree (Penal Law former § 265.03 [2]), and Criminal Possession of a Weapon in the Third Degree (Penal Law § 265.02 [1]).  Petitioner was sentenced to twenty-five years imprisonment for the manslaughter conviction, fifteen years imprisonment for the second degree weapons conviction, and two and one-third to seven years imprisonment for the third degree weapons conviction.  The sentences were ordered to run concurrently with each other.

For the reasons stated below, habeas relief is denied and the petition is dismissed.

## II.  Factual Background and Procedural History

Under Indictment No. 01-2203-S02, Petitioner was charged with Murder in the Second Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree.  See Ind. No. 01-2203-S02 dated 10/25/02 at Resp't Ex. A. The charges arose from an incident that occurred in the City of Buffalo, New York on October 20, 2001, wherein Petitioner shot and killed Robert Gamble ("Gamble" or "the victim").

On the date of the crime and the night prior thereto, Petitioner, his girlfriend (Raquel Calhoun ("Calhoun")), and two of his friends, Michael Ott ("Ott") and Nya Smith ("Smith"), had been drinking at several clubs.  Trial Trans. [T.T.] 439.  The four friends drove in Calhoun's white Ford Explorer to an all-night restaurant to get something to eat.  T.T. 456.  Calhoun wore a pink shirt, pink boots, pink belt, and carried a pink purse.  T.T. 108, 294.  Petitioner and Ott exited the vehicle and Petitioner went into the restaurant to order food while Calhoun and Smith remained inside the vehicle.  T.T. 463.  When Petitioner exited the restaurant, he noticed Ott talking to Gamble.  T.T. 465-466. Gamble and Ott approached Petitioner, and Petitioner asked Gamble if he was looking for him, to which he responded he was not. T.T. 300.  Petitioner then walked around the corner with Ott and

Gamble.   About  a  minute  later,  several  gunshots  were  fired.
T.T. 301.

Smith, who was still sitting in the vehicle, saw one or two
flashes, and saw Petitioner's arm in the air.  T.T. 104.  Shortly
thereafter,  Petitioner  and  Ott  returned  to  the  vehicle  and
Petitioner told Calhoun to drive off.  Petitioner stated that "he"
-- referring to the victim -- was about to shoot "Mike."  T.T. 105.

Gamble  was  hit  with  four  bullets  from  a  Colt  .45  semi-
automatic handgun, and died at the scene of the crime.  Dr. Sung
Ook Baik, who subsequently conducted Gamble's autopsy, testified
that  Gamble  died  from  multiple  gunshot  wounds  to  the  back.
T.T. 196, 369-370, 403, 405-406.

Shawn Ashford ("Ashford"), a friend of Gamble's, after hearing
the gunshots, ran to the scene and saw Gamble on the ground.  He
held Gamble until police arrived.  About fourteen feet away from
the victim's body, the police found an unloaded .25 caliber weapon
with a pink handle and pink plastic grips.  T.T. 190-193, 230, 234,
235, 338.   While Gamble's body was being moved by a morgue
attendant at the scene of the crime, an unloaded .25 caliber pistol
fell out of Gamble's underwear.  T.T. 196-199, 340.  Neither of
these .25 caliber guns had been fired.  T.T. 250.

Meanwhile, Calhoun drove down Main Street and turned onto
Niagara Falls Boulevard.  Calhoun pulled into a restaurant parking
lot a few lots away from a motel.  All of the occupants -- except

Calhoun -- exited the vehicle and began walking away from it when Town of Amherst Police Officer Michael Camilleri, who had received a radio dispatch from Buffalo Police with respect to the shooting, pulled up behind the Ford Explorer. Officer Camilleri ordered the three individuals back to the vehicle and to put their hands on the vehicle. He also ordered the driver out of the vehicle. Officer Camilleri radioed for back-up and approximately three to four minutes later, Buffalo police officers arrived. Petitioner, Calhoun, Smith and Ott were frisked, handcuffed and placed in separate police cars. One of the officers directed his flashlight into the white Ford Explorer and discovered a gun in the vehicle's cargo area. Hr'g Mins. [H.M.] of 01/23/02 5-13; T.T. 139-150. This gun was determined to be the same Colt .45 that was used to kill Gamble. T.T. 167-168, 203. Subsequent examination of the gun revealed that the hammer was back, the magazine was gone and no cartridges were in the chamber. T.T. 203. The empty magazine was discovered outside on the vehicle's rear passenger running board. T.T. 168, 204-205. Officer Camilleri testified that Petitioner had exited the vehicle from the passenger side. T.T. 148. The police also discovered a pink purse in the backseat, containing items that belonged to Calhoun, as well as a health card that belonged to Petitioner. T.T. 212. As Petitioner sat handcuffed in the police car, Officer John Abrams of the Buffalo Police Department overheard Petitioner muttering to himself. According to Officer Abrams,

Petitioner stated, "I blasted the fool, he had it coming."
T.T. 267.  Petitioner, who testified at trial, stated that he did
not remember making this statement.  T.T. 483.

At trial, Petitioner admitted to shooting Gamble, but
maintained that it was done in self-defense.  Petitioner testified
that when he encountered Gamble at the restaurant, Gamble appeared
high and drunk and "was acting crazy."  T.T. 470.  According to
Petitioner, as he and Gamble walked around the corner of the
building toward Main Street, Gamble repeatedly asked Petitioner
what Petitioner was doing in Gamble's neighborhood.  T.T. 471-473.
Petitioner testified that Gamble then pulled out a gun, cocked it,
and started to point it up at him.  Petitioner testified that he
heard a click and feared that Gamble was going to shoot him.
T.T. 475-479.  Petitioner testified that he then pulled out his own
loaded Colt .45 and fired it until it was empty because he feared
for his own life; there were six rounds in the magazine.  T.T. 479-
480, 185.  According to Petitioner, he and Ott then ran back to
Calhoun's vehicle, and told Calhoun to drive away quickly.
T.T. 480.  Petitioner testified that Calhoun decided to head toward
a motel on Niagara Falls Boulevard so that they could figure out
what to do next.  T.T. 481.  Petitioner further testified that
Calhoun stopped in a restaurant parking lot near a hotel on Niagara
Falls Boulevard and that he then exited the vehicle.  Shortly

thereafter, an Amherst Police patrol car pulled into the parking lot.  T.T. 147-148.

A jury trial was conducted over the course of several days before the Hon. Russell P. Buscaglia.  Prior to jury deliberations, the trial court informed the jury that the three weapons in evidence would be sent to the jury room, and that the weapons would have trigger locks on them, rendering them inoperable.  The trial court instructed the jurors that if they wished to have the trigger locks removed in order to "experiment" with the weapons, the foreperson should submit a note to the court requesting same. During deliberations, however, and without having submitted such note or otherwise advising the court, the jury foreperson requested a court deputy to remove the trigger lock and pull back the slide of People's Exhibit Number 60 (a .25 caliber pistol) so that the jury could hear the sound that was produced.  The deputy complied with that request.  The foreperson also asked the deputy to show the jury where the clip release is located, and the deputy did so. The deputy then replaced the trigger lock and left the pistol in the jury room.  He had no conversation with the jurors relative to the demonstration.  The deputy informed the court what had occurred during an off-the-record conversation held in chambers in the presence of the attorneys.  The court then placed the issue on the record, explaining that if the jurors had sent a note, the jurors themselves would have been permitted to test the slide after the

trigger lock was off, but that the court did not intend to permit a demonstration by the deputy.   The prosecutor objected to the demonstration that had occurred, and Petitioner's attorney did not. The court gave no additional instructions regarding the incident. T.T. 828-836.[1]

Petitioner was found guilty of first degree manslaughter (under the first count of the indictment) and both of the counts charging weapon possession.   T.T. 847.   He was subsequently sentenced to twenty-five years for the manslaughter conviction, followed by a five-year period of post-release supervision.  He was also sentenced to fifteen years for the second degree weapon possession conviction, followed by a five-year period of post-release supervision, and to two and one-third to seven years for the remaining weapon possession conviction.   The sentences were ordered to run concurrently with each other.   See Certificate of Conviction-Imprisonment at Resp't Ex. A.

The Appellate Division, Fourth Department unanimously affirmed the judgment of conviction on February 2, 2007.   People v. Washington, 37 A.D.3d 1131 (4th Dep't 2007); lv. denied, 8 N.Y.3d 992 (2007).

On or about April 21, 2008, Petitioner moved, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, to have the judgment of

---

[1]

Petitioner challenges this demonstration in the instant proceeding; this particular set of facts forms the basis of claims one and two of Petitioner's habeas corpus petition.   See Pet. ¶ 12, Grounds One and Two.

conviction vacated.  That motion was denied, and leave to appeal was denied.  See Resp't Ex. D.

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) that an unsupervised communication between court personnel and the jury denied him of his right to due process and a fair trial; (2) ineffective assistance of trial counsel; and (3) erroneous jury instructions. See Pet. ¶ 12, Grounds One-Three (Dkt. No. 1); Traverse and Supp. Mem. [T.V.], Grounds One-Three (Dkt. No. 10).

## III. General Principles Applicable to Habeas Review

### A.   The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of

materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner]

shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### B.   Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

C.   **The Adequate and Independent State Ground Doctrine**

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. Wainwright v. Sykes, 433 U.S. 72 (1977). Federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "independent of the federal question and adequate to support the judgment." Cotto v. Herbert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)); accord Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar qualifies as an "independent and adequate" state law ground where "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'" Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 262 (1989)). A state procedural rule will be adequate to preclude habeas review if it is "firmly established and regularly followed," unless the state rule is "exorbitant." Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

A federal court may review a claim, notwithstanding the petitioner's default, if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." Coleman, 501 U.S. at 750; see also Levine, 44 F.3d at 126; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). A petitioner may establish cause by pointing to "some objective

factor external to the defense [that] impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986); accord Coleman, 501 U.S. at 753. A petitioner suffers actual prejudice if the outcome of the case would likely have been different had the alleged constitutional violation not occurred. See Reed v. Ross, 468 U.S. 1, 12 (1984). Alternatively, even if the petitioner is unable to show cause and prejudice, the court may consider the claim if he can demonstrate that failure to do so will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750.

## IV.  Petitioner's Claims

## 1.  Unsupervised Communication Between Court Personnel and Jury

Petitioner argues, as he did on direct appeal, that an unsupervised communication between court personnel and the jury deprived him of due process and his right to a fair trial. See Pet. ¶ 12, Ground One; T.V., Ground One. The Appellate Division, Fourth Department rejected this claim on a state procedural ground because Petitioner had failed to properly preserve the issue for appellate review. See Washington, 34 A.D.3d at 1133. Consequently, as discussed below, this claim is procedurally defaulted from habeas review.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and

adequate to support the judgment.  See Coleman v. Thompson, 501 U.S. 722, 751 (1991).  Here, the state court relied on New York's preservation rule (codified at CPL § 470.05 [2]) to deny Petitioner's claim because it had not been properly preserved for appellate review.  See Washington, 34 A.D.3d at 1133.  The Second Circuit has determined that CPL § 470.05 [2] is an independent and adequate state procedural ground.  See Garcia v. Lewis, 188 F.3d 71, 79-82 (2d Cir. 1999);  Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).  The Appellate Division, Fourth Department's reliance on New York's preservation rule is an adequate and independent state ground which precludes this Court's review of Petitioner's claim.

This Court, however, may reach the merits of Petitioner's claim, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a fundamental miscarriage of justice.  See Coleman, 501 U.S. at 750.  Petitioner alleges ineffective assistance of trial counsel as cause for the default.  See Pet. ¶ 12, Ground Two; T.V., Ground One.  A claim of ineffective assistance of counsel may establish cause for a procedural default. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000);  McCleskey v. Zant, 499 U.S. 467, 494 (1991);  United States v. Frady, 456 U.S. 152, 168 (1982).  However, ineffective assistance of counsel cannot serve as cause for the procedural default where, as here, the

underlying ineffective assistance of counsel claim is itself
procedurally defaulted (see discussion at section "IV,2" below).
See Reyes v. Keane, 118 F.3d 136, 140 (2d Cir. 1997) (finding that
a petitioner may not bring an ineffective assistance claim as cause
for a default when that ineffective assistance claim itself is
procedurally barred); see also Edwards, 529 U.S. at 450-451
(finding that a procedurally defaulted ineffective assistance of
counsel claim can serve as cause to excuse the procedural default
of another habeas claim only if the habeas petitioner can satisfy
the cause and prejudice standard with respect to the ineffective
assistance claim itself).[2]  Furthermore, Petitioner has failed to
demonstrate that this Court's failure to review the claim will
result in a fundamental miscarriage of justice.  The claim is
therefore dismissed as procedurally defaulted.

## 2.    Ineffective Assistance of Trial Counsel

Petitioner alleges, as he did in his motion for vacatur, that
he received ineffective assistance of trial counsel based upon
counsel's failure to object to the unsupervised communication
between court personnel and the jury.  The Appellate Division,
Fourth Department rejected this record-based claim on a state

---

[2]

The Court notes that Petitioner's ineffective assistance of counsel is also
meritless (see discussion at section "IV, 2" below).  To this extent, even if
Petitioner's ineffective assistance of counsel claim was not procedurally barred
itself, ineffective assistance of counsel would still not serve as "cause" for
the procedural default.  See McCleskey, 499 U.S. at 494 ("Attorney error short
of ineffective assistance of counsel, however, does not constitute cause and will
not excuse a procedural default.").

procedural ground, pursuant to CPL § 440.10(2)(c), because it could have been raised on direct appeal, but unjustifiably was not.  See Mem. and Order of the Supreme Court, Erie County (Hon. Russell P. Buscaglia), dated 01/26/10 at Resp't Ex. D.  Accordingly, as discussed below, this claim is procedurally defaulted from habeas review.

A federal court may not review a question of federal law decided by a state court if the state court's decision rested on a state law ground that is independent of the federal question and adequate to support the judgment.  See Coleman, 501 U.S. at 751. CPL § 440.10(2)(c) is a state procedural rule that mandates the denial of any CPL § 440.10 motion where the defendant unjustifiably failed to argue a constitutional violation on direct appeal despite a sufficient record.  As the Second Circuit has recognized, the state court's invocation of this rule constitutes an adequate and independent state ground barring federal habeas review.  See e.g., Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003);  Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997);  Aparicio, 269 F.3d at 91; Levine v. Commissioner of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995) (refusing to conduct federal habeas review of ineffective assistance of counsel claim where New York's appellate court found claim to be procedurally barred under CPL § 440.10(2)(c)).

Petitioner cannot make a successful showing of cause[3] and prejudice to overcome the procedural default, nor has he demonstrated that this Court's failure to review the claim will result in a fundamental miscarriage of justice.   Accordingly, Petitioner's ineffective assistance of trial counsel claim is dismissed as procedurally defaulted.

In any event, even if Petitioner was able to overcome the procedural default, this claim is meritless.   To demonstrate a violation of his Sixth Amendment right to the effective assistance of counsel, a petitioner must show that his attorney's representation was deficient in light of prevailing professional norms and that prejudice inured to him as a result of that deficient performance.   Strickland v. Washington, 466 U.S. 668, 687 (1984).   To satisfy the first prong, counsel's conduct must have "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just

---

[3]

To the extent, if any, Petitioner alleges trial counsel's failure to object to the weapons demonstration (thereby properly preserving the issue for appellate review) as "cause" for the default, such allegation is insufficient to establish "cause" insomuch as trial counsel's performance in this respect was not constitutionally deficient (see discussion of this claim, on the merits, below). See McCleskey, 499 U.S. at 494("Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default."). To the extent, if any, Petitioner alleges appellate counsel failed to raise an ineffective assistance of trial counsel claim based on trial counsel's failure to object to the weapons demonstration, such allegation is also insufficient to establish "cause" insofar as Petitioner never raised an ineffective assistance of appellate counsel claim in state court. See Murray, 477 U.S. at 488-90; see e.g., Ross v. Burge, 03 Civ. 3867, 2008 U.S. Dist. LEXIS 20141, *20-22 (S.D.N.Y. March 21, 2008) (finding Petitioner's ineffective assistance of counsel claim cannot serve as cause for a procedural default because it was never presented to the state court as an independent claim).

result[.]"  Id. at 686.  As to the second prong, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional" performance, the result of the trial would have been different.  Id. at 694.  Despite his attempts to do so in his Traverse, Petitioner has not, and cannot, meet this standard.

The record reflects that prior to jury deliberations, the court instructed the jurors that if they wished to have the trigger locks removed from the three weapons in evidence, the foreperson should submit a note requesting same.  During deliberations however, without having submitted such a note or otherwise advising the court, the jury foreperson requested a court deputy to remove the trigger lock and pull back the slide of People's Exhibit No. 60 (a .25 caliber pistol).  The deputy complied with that request. The foreperson also asked the deputy to show the jury where the clip release is located, which he did.  The deputy had no conversation with the jurors relative to said demonstration.  T.T. 828-832.  After the deputy advised the court what had occurred, a conversation was held in chambers in the presence of both attorneys.  The court then placed the issue on the record, explaining that if the jurors had sent a note, the jurors themselves would have been permitted to test the slide after the trigger lock was off of the gun.  T.T. 833-836.  Petitioner's attorney did not object to the demonstration that occurred, and it

was entirely reasonable for him not to have done so.  As the court explained on the record, the same process would have occurred had the jury sent out a note asking for the gun.  T.T. 833-834.  Thus, Petitioner cannot demonstrate that counsel's failure to object to the demonstration was constitutionally deficient within the meaning of Strickland, and that, but for, counsel's failure to object to the demonstration, there is any probability -- let alone a reasonable one -- that the outcome of his trial would have been different.  Indeed, the verdict would have been the same regardless of whether the jury had submitted a note to the trial court (as it had been instructed to do) or it did not.  Therefore, even if this claim was not procedurally defaulted, it would still provide no basis for habeas relief.  Accordingly, Petitioner's ineffective assistance of counsel claim is dismissed as procedurally defaulted, and, in any event, meritless.

**3.    Erroneous Jury Instructions**

Petitioner argues, as he did on direct appeal, that the trial court erred in its final instructions to the jury on justification, thereby denying him his constitutional right to due process.  In particular, Petitioner argues that: (1) the trial court improperly denied his request to inform the jury that evidence of the victim's violent past could be considered with regard to the question of who was the initial aggressor; and (2) the trial court did not provide an unequivocal instruction that if the jury found Petitioner

justified in committing murder in the second degree, it should end its deliberations and not continue on to consideration of the lesser-included offenses.  <u>See</u> Pet. ¶ 12, Ground Three; T.V., Ground Three;  <u>see also</u> Pet'r Br. on Appeal, Point III at Resp't Ex. B.  The Appellate Division, Fourth Department rejected this claim on the merits, finding that, "the court properly instructed the jury with respect to the defense of justification." <u>Washington</u>, 37 A.D.3d at 1132.  As discussed below, this claim provides no basis for habeas relief.

Initially, and as a general matter, challenges like Petitioner's, which relate to a defense provided by state law, are not cognizable on habeas review.  For an error in the jury charge to give rise to federal habeas corpus relief, a petitioner must carry a heavy burden.  "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154 (1977).  A petitioner must show

> not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant under the Fourteenth Amendment . . . . The question is not whether the trial court failed to isolate and cure a particular ailing instruction, but rather whether the ailing instruction itself so infected the entire

> trial process that the resulting conviction
> violates due process.

Cupp v. Naughten, 414 U.S. 141, 146-47 (1973); see also Estelle v. McGuire, 502 U.S. 62, 72 (1991).  In making this determination, a court "must consider the challenged portion of the charge not in 'artificial isolation,' but rather 'in the context of the overall charge.'"  Justice v. Hoke, 45 F.3d 33, 34 (2d Cir. 1995) (quoting Cupp, 414 U.S. at 146-47).

Turning to Petitioner's first argument, the record reflects that the defense requested a final jury instruction on justification that included language that the victim's violent past was relevant to determining who was the initial aggressor. T.T. 696; see also Pet'r Br. on Appeal, Point III at Resp't Ex. B. The trial court declined Petitioner's requested charge, and, instead, gave its standard justification charge.  T.T. 807-812.

Petitioner's claim fails to the extent he cannot show an error of state law, much less an error of federal constitutional magnitude.  In New York, it is well-established that "evidence of a deceased victim's prior threats against [a] defendant is admissible to prove that the victim was the initial aggressor." People v. Petty, 7 N.Y.3d 277, 285 (2006) (citing Stokes v. People, 53 N.Y. 164, 174-75 (1873); People v. Miller, 39 N.Y.2d 543, 549 (1976).  A review of the record reflects that there was no evidence that the victim had previously threatened Petitioner himself.

Rather, Petitioner testified that the victim had a reputation in the neighborhood as someone who "was a violent, dangerous person; you know, a person known to carry guns." T.T. 468. Petitioner testified that he was aware that the victim had been convicted and "did some jail time" for "a burglary, robbery charge that he had" back in 1990. T.T. 469. Further, when asked by the prosecutor if he was "aware of any other incidents of specific acts of violence committed by Mr. Gamble," Petitioner responded, "[y]es, numerous of them. Mid-90 I had heard through other people in the street he shot up a house with a shotgun, maybe 95-6. He done robbery in the neighborhood before, leading up to October." T.T. 469. Thus, to the extent the victim's prior violent conduct was not directed at or related to Petitioner, it did not bear on whether he was the initial aggressor and the trial court therefore properly refused the requested charge.

In any event, even if the trial court erred in failing to give the requested charge, such error cannot be said to have "infected the entire trial process that the resulting conviction violated due process." Cupp, 414 U.S. at 147. When read as a whole, the trial court's justification charge fairly informed the jury of New York's justification defense and the "initial aggressor" principle, accurately setting forth both concepts and the legal parameters of each. Accordingly, this portion of Petitioner's claim provides no basis for habeas relief and is dismissed.

Similarly, the second portion of Petitioner's jury instruction claim is equally meritless. Petitioner, who was ultimately convicted of first degree manslaughter (under count one of the indictment), argues that the trial court did not explicitly and/or clearly instruct that a justification finding regarding murder should end deliberations on any lesser-included offenses. See Pet. ¶ 12, Ground Three; T.V., Ground Three. On direct appeal,[4] Petitioner's argument was based upon a serious of New York State cases -- including People v. Castro, 131 A.D.2d 771, 773 (1987) and People v. Feuer, 11 A.D.3d 633, 634 (2004) -- which have held that jurors must be charged "that if they found the defendant not guilty of a greater charge on the basis of justification, they [are] not to consider any lesser counts." Feuer, 11 A.D.3d at 634 (citing Castro and other cases). The purpose of this requirement is to prevent inconsistent verdicts, such as a finding of not guilty of murder on grounds of justified use of force in self-defense, but nevertheless guilty of manslaughter. See People v. Hoy, 122 A.D.2d 618, 619 (4th Dep't 1986).

In Petitioner's case, the trial court gave the following instruction:

> Now, if you find the defendant acted in self-
> defense, as I have just told you, and you find

---

[4]

Petitioner has failed to set forth, with any particularity, the exact legal contours of this claim in his habeas pleadings. In an effort to more fully understand Petitioner's argument, the Court looks to Petitioner's appellate brief where this claim was thoroughly briefed. See Pet'r Br. on Appeal, Point III at Resp't Ex. B.

> - therefore find that the defendant is not
> guilty of the crime of murder in the second
> degree, that ends your deliberations as to
> count one.  If you find him guilty of murder
> in the second degree that similarly ends your
> deliberations as to count one.  Only if you
> find the defendant not guilty of murder in the
> second degree under count one for some reason
> other than justification do you then consider
> a lesser offense under count one.

T.T. 813.  Despite Petitioner's contentions that this instruction was unclear or did not explicitly convey the message that was intended, this instruction did indeed achieve the result mandated by cases such as <u>Castro</u> and <u>Feuer</u> even if it did so with slightly different words than those cases suggest.

In any event, even if the trial court's instruction was defective, such defect would not be grounds for habeas relief.  The Supreme Court has noted the "almost invariable assumption of the law that jurors follow their instructions."  <u>Richardson v. Marsh</u>, 481 U.S. 200, 206 (1987).  Here, the trial court clearly conveyed, at numerous times throughout the final jury instruction, the relationship between the defense of justification, the murder count with which Petitioner was charged (in the first count of the indictment), and the lesser included offense of manslaughter.  Further, the jury was given express, detailed instructions on when to stop their deliberations with respect to count one of the indictment, which they are presumed to have followed.  Thus, any defect in the particular language or wording of the charge under

state law did not "by itself so infect[] the entire trial that the resulting conviction violates due process." <u>Cupp</u>, 414 U.S. at 147; <u>see e.g.</u>, <u>Morales v. Keane</u>, 92 Civ. 8189 (LBS), 1994 U.S. Dist. LEXIS 1077, *10-12 (S.D.N.Y. Feb. 4, 1994) (denying habeas petition and holding that any error in the state trial court's instruction concerning the proper sequence of deliberation regarding the justification defense and the homicide counts did not rise to the level of a constitutional due process violation). Accordingly, this portion of Petitioner's claim provides no basis for habeas relief and is dismissed.

In sum, Petitioner's erroneous jury instruction claim provides no basis for habeas relief. The Court cannot find that the state court's adjudication of this claim contravened or unreasonably applied settled Supreme Court law. The claim is dismissed in its entirety.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. <u>See, e.g.</u>, <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any

appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:    August 23, 2011
          Rochester, New York